[No. 7669.   Department Two.   January 14, 1910.]

JOHN HUNTINGTON et al., Appellants, v. L. L. LOVE et al., Respondents.

JOHN HUNTINGTON et al., Appellants, v. PACIFIC SECURITY STORAGE & WAREHOUSE COMPANY, Respondent.[1]

APPEAL—REVIEW—TRIAL DE NOVO—ERROR ALLEGED BY RESPONDENTS. In an equity case tried de novo on appeal, the respondent, having taken exception to findings, is entitled, without having taken a cross-appeal, to have the erroneous findings reviewed and corrected, and the judgment affirmed, if supported by the evidence or right on any ground, although based upon erroneous findings.

INSANITY—EVIDENCE—SUFFICIENCY. The evidence is insufficient to show that one who had been an inmate of an insane asylum for a few months, and at times somewhat deranged, was insane, where it appears that for over three years before the commencement of the action, she had held a responsible position of trust as a housekeeper, and witnesses testified to her complete sanity during such time.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered February 25, 1908, upon findings in favor of the defendants, after a trial before the court without a jury, dismissing an action to redeem from tax sales. Affirmed.

[1]Reported in 106 Pac. 185.

*B. W. Coiner, Walter Christian*, and *P. C. Sullivan*, for appellants.

*T. W. Hammond, W. H. Doolittle*, and *S. F. McAnally*, for respondents.

Crow, J.—These two actions were commenced by Mary C. Huntington, by Alfred J. Huntington, her guardian *ad litem*, to redeem from tax sales certain real estate in the city of Tacoma. L. L. Love and J. H. Spencer were defendants in one action and the Pacific Security Storage & Warehouse Company, a corporation, was defendant in the other, they being the several holders of the tax titles. As the two actions involved the same issues of fact and law, they were consolidated and tried together. After they had been commenced, John Huntington, husband of Mary C. Huntington, by amendment of the complaint, was made an additional party plaintiff. The trial judge made findings of fact and conclusions of law, on which an order of dismissal was entered. The plaintiffs have appealed.

Mary C. and John Huntington were married in 1879 and thereafter, but prior to 1895, acquired as community property, the real estate involved in this action. The appellants contend that Mary C. Huntington became insane about December, 1895; that she has been insane ever since; that during such insanity, certain state, county, and municipal taxes assessed against the community real estate became delinquent; that about December, 1904, the tax liens were foreclosed; that under such foreclosure proceedings, and by mesne conveyances, the respondents acquired their respective tax titles; that prior to the commencement of this action, tenders of all the delinquent and subsequent taxes, with penalty, interest, and costs were made by appellants to the respondents, and that Mary C. Huntington is now entitled to redeem the property from the tax sales. The regularity of the tax foreclosure proceedings is not questioned, but appellants predicate the right of redemption upon the insanity of Mary C.

Huntington and on Pierce's Code, § 8696 (Laws 1899, p. 298), which in part reads as follows:

"If the real property of any minor heir, or any insane person, be sold for non-payment of taxes or assessments, the same may be redeemed at any time after sale and before the expiration of one year after such disability has been removed upon the terms specified in this section on the payment of interest at the rate of fifteen per cent per annum on the amount for which the same was sold, from and after the date of sale, and in addition the redemptioner shall pay the reasonable value of all improvements made in good faith on the property, less the value of the use thereof, which redemption may be made by themselves or any person in their behalf."

The respondents deny the alleged insanity of Mary C. Huntington, and contest her right to redeem, even if insane. The trial judge found that the real estate was the community property of Mary C. and John Huntington; that the respondents had acquired the tax titles under the foreclosure proceedings; that sufficient tenders had been made to them by the appellants, and

"(4)  That theretofore and about the month of December, A. D. 1896, this plaintiff, Mary C. Huntington, became insane, and ever since said time has been, and is now insane.

"(5)  That during the insanity of the said Mary C. Huntington and prior to the year 1904, certain state, county and municipal taxes were levied and assessed against the above described premises."

Upon the findings, the trial judge held that Mary C. Huntington was not entitled to redeem, because, during the entire period in controversy, her husband, John Huntington, was of sound mind, and having the management and control of the community property, had neglected to pay the taxes; that the community was not insane, and that the community was not, nor was either member thereof, entitled to redeem, the wife only being insane. The appellants excepted only to the conclusions of law and decree. They now contend that, upon the findings made, a decree for redemption should have been entered in their favor. The respondents filed written

exceptions to findings 4 and 5, and other findings, contending that they were not supported by the evidence. Although judgment was entered in respondents' favor, they have caused a statement of facts to be prepared and certified in support of their contention that the findings are not sustained by the evidence.

Respondents insist that to make the statute applicable and entitle the appellants to the right of redemption, it must appear (a) that the redemptioner is the owner of the property; (b) that the redemptioner was insane, and (c) that the action has been commenced in time. Discussing the first proposition, they contend that the community (not either spouse) was the owner of the real estate, and that one spouse—especially the wife—cannot redeem when it appears, as in this case, that the husband has at all times been of sound mind; that he had the management and control of the community property, and that he had failed to pay the taxes. Appellants, commenting on these three contentions, say:

"If by the use of the word owner in the first requirement announced by the respondents is meant the technical holder in whose name the legal title to the real estate sought to be redeemed stands, it has no justification under the language of the statute. The word 'owner' does not appear in the redemption statute anywhere in relation to the right of redemption. The language of the statute is that real property may be redeemed under the provisions of the act, and when speaking of minor heirs or insane persons it provides that if the real property of any minor, heir or insane person be sold for non-payment of taxes the same may be redeemed at any time after sale and before the expiration of one year after such disability has been removed. The clear intention of the statute is that any one having an interest in real property which has been sold for taxes could, under certain conditions, redeem the same. The things laid down in (b) and (c) as being also necessary we concede to be correct. The court below in its finding expressly held and found that the redemptioner was at all times insane, and, she being insane, there is no question but that the suit was brought in time while she was still insane."

By reason of the facts which we find, hereinafter stated, it will not be necessary for us to determine whether Mary C. Huntington, if insane, has the right to redeem. We are unable to find that she was insane when the tax foreclosure occurred, or at any time thereafter, prior to the commencement of this action. Assuming, without deciding, that Mary C. Huntington, if insane, had the right to redeem, notwithstanding the fact that her husband was at all times sane, it would necessarily follow that, upon the findings made by the trial court, the judgment entered would have to be reversed. We hold, however, upon the record before us, that the respondents are not concluded by the findings made, they having excepted thereto. All of the evidence has been properly certified to this court in a statement of facts, the cause is before us for trial *do novo*, and it is our duty to examine the entire record and determine whether the evidence sustains the findings to which the respondents have interposed timely and proper exceptions. They were not aggrieved by the final judgment. It was satisfactory to them. They contend it was right, and could not appeal therefrom. If the proper judgment has been entered, it should be sustained, as respondents are entitled to have it affirmed, even though it may have been reached by unsound reasoning.

We have carefully examined and considered the evidence, with the result that we are unable to approve the findings made by the learned trial judge. His findings are not controlling on this court in an equity case, and we are constrained to say that the evidence is not sufficient to support the appellants' contention that Mary C. Huntington was insane at the time of the tax foreclosure proceedings, or at any time thereafter, prior to the commencement of this action. There is evidence that, about December 31, 1895, she was committed to the state hospital for the insane at Steilacoom; that she remained there about twenty-five or thirty days; that she was again committed in 1900; that she was discharged a few months later; and that between these two

periods it is quite probable that she was at times, and to some
extent, deranged. Although we incline to the conclusion that
she was, perhaps, sane during the time between her two com-
mitments, and for some time thereafter, we would not, were
the investigation of her condition confined to that period
alone, interfere with the findings made by the trial judge, the
evidence as to that time being in sharp conflict. From the
overwhelming weight of the evidence, it satisfactorily appears
that, from early in the year 1896 to the date of the trial,
excepting perhaps most of the years 1899 and 1900, Mary
C. Huntington first provided for and supported herself as a
servant or housekeeper in private families in Walla Walla
and Tacoma, and had complete charge of all her own business
affairs; that thereafter she went to Victoria, B. C., where she
first served a little less than one year as housekeeper in the
home of one Shakespeare; that Mr. Shakespeare as a witness
for appellants gave testimony tending to show her mind to
have been somewhat affected while at his house; that early
in 1903, she became housekeeper in the home of one J. E.
Church, a prominent business man and citizen of Victoria,
B. C., where she continued for three and one-half years, and
until after the commencement of this action; that while she
was there, the tax liens were foreclosed; that Mrs. Church
was in feeble health; that she depended on Mrs. Huntington
in many ways, reposing great confidence in her; that Mr. and
Mrs. Church at times left Victoria, visiting distant points,
for different periods, once for about three months; that dur-
ing this absence they permitted their four children, one less
than four years of age and all under fourteen, to remain in
their home in the custody and control of Mrs. Huntington,
who cared for them and the home; that affidavits of Mr. and
Mrs. Church, one Dr. Helmckeman, a practicing physician,
and seven other witnesses living in Victoria, were by stipula-
tion introduced as evidence; that from each and all of these
affidavits it appears that the several witnesses had known
Mrs. Huntington during the three and a half years she was

housekeeper in the Church home; that they had frequently
conversed with her and observed her condition; that they had
abundant opportunities for judging her soundness of mind
and her intelligence regarding the ordinary affairs of life;
that in their opinion she was mentally sound, and that she
was capable of transacting any business in which she might
have an interest. In addition to this evidence, an attorney
and a physician of Tacoma visited her in the Church home,
consulted with her in the presence of Mr. Church in regard to
this litigation, and had her execute certain papers relative
thereto. They testified in a most convincing manner to her
competency, her complete sanity, her excellent memory, her
rational appearance, and her ability to intelligently under-
stand and transact business. Appellants failed to introduce
the evidence of a single witness from the city of Victoria to
show the mental condition of Mary C. Huntington during the
three and one-half years she lived at the Church home. They
had ample time to look up such evidence covering the period
mentioned, to take depositions of any witnesses they might
find, and to do so after they knew of the evidence obtained by
respondents. Although it is true that during the period
named her husband and son made her one or two short visits
in Victoria; that she made one or two like visits in Tacoma;
that her husband and son and certain other witnesses who
met her during her brief visits in Tacoma, have given some
evidence tending to question her sanity on those occasions, we
think their evidence is successfully contradicted by other wit-
nesses living in Tacoma who met her while there, and that
at best the testimony either way covers but a few days' time.
The evidence of her son and husband is that, in their opinion,
she was in much better mental condition when absent from
home and working for herself than she was when living with
the family. The record also shows that the relations between
herself and her husband and sons were not cordial or har-
monious. No good purpose could be served by going fur-
ther into the facts shown, although many additional and con-

vincing facts could be mentioned. It will be sufficient to state that we are unable to find any evidence in the record sufficient to show a condition of insanity on the part of Mrs. Huntington at any time during the three years and a half immediately prior to the commencement of this action, which period included the date of the foreclosure of the tax liens. This being true, it necessarily follows that all rights of Mary C. Huntington were barred by the foreclosure proceedings, and that she is not entitled to redeem.

The proper judgment has been entered, and the respondents are entitled to have it affirmed. It is so ordered.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.