[Sac. No. 1926. In Bank.—June 29, 1914.]

ELIZABETH TURNER, Administratrix of the Estate of William C. Turner, Deceased, and LAS ANIMAS AND SAN JOAQUIN LAND COMPANY (a Corporation), Appellants, v. EAST SIDE CANAL AND IRRIGATION COMPANY, Respondent.

WATER—RIPARIAN RIGHTS—DIVERSION AT POINT ABOVE LAND—USE OF REASONABLE SHARE OF WATER ATTRIBUTABLE TO RIPARIAN RIGHT.— The owner of riparian land has the right to use the water of the stream, and in order to obtain it, he has the right to go to a point on the stream above his land, with the consent of the abutting and intervening owners, and there take out the water and conduct it to his land. So long as he takes in this manner only his reasonable share of the water and uses it only on his riparian land, he is exercising his riparian rights and nothing more.

ID.—CARRYING WATER THROUGH CANAL—DELIVERY TO INTERMEDIATE RIPARIAN OWNER—USE NOT ADVERSE.—The taking by a lower riparian proprietor of water into its canal above, carrying it down to and delivering an appropriate share thereof upon the land of an intermediate riparian proprietor for use by the latter thereon, was not an act in itself hostile, adverse, or injurious to such intermediate proprietor, so far as concerns the right to and the water itself so delivered.

ID.—RIGHT TO DIVERT FROM PARTICULAR PLACE—ACQUISITION OF RIGHT BY PRESCRIPTION AS AGAINST INTERMEDIATE PROPRIETOR.—The right of the lower riparian proprietor to take the water from such place of diversion is not identical with the right to the water itself, and the two rights are not dependent. The lower proprietor may acquire the prescriptive right to divert the water at that particular place, and to insist that the appropriate share of the intermediate proprietor should also be taken out at that place and through its canal, without acquiring the right to take that water from the intermediate proprietor and use it elsewhere, or any right whatever to the use of that water.

ID.—RIGHT OF RIPARIAN OWNER TO REASONABLE SHARE OF WATER.—The mere use by a riparian proprietor of his reasonable share of the waters of a natural stream is not adverse to those above or below. There is attached to riparian land the right to the reasonable use, as compared to other riparian lands, of the waters of the stream.

ID.—IRRIGATION COMPANY—RIGHT OF LANDOWNER TO CONTINUED SUPPLY OF WATER.—Under section 552 of the Civil Code, the owner of land lying on the line and within the flow of the canal of a company furnishing water for irrigation, who has been furnished water from such canal for the irrigation of his land, is entitled to have the supply of water continued upon the established rates and terms.

APPEAL from a part of a judgment of the Superior Court of Merced County.   E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, J. W. Knox, and Edward F. Treadwell, for Appellants.

James F. Peck, for Respondent.

SHAW, J.—The plaintiffs appeal from the part of the judgment declaring that the defendant "is entitled to divert" from the San Joaquin River, at a point above plaintiff's land, two hundred and eighty-one cubic feet of water per second, "for sale, rental and distribution, for the irrigation of land and for the watering of stock and domestic uses thereon," and quieting the title of the defendant to said water "against plaintiffs as the owners of the riparian lands above described."

The plaintiffs each own a large body of land on and near the San Joaquin River. Other large bodies of land belonging, respectively, to J. J. Stevinson, the Sharon estate, and J. W. Mitchell, lie further down the river and were, in part at least, riparian thereto. The defendant corporation was formed by Stevinson and Mitchell in 1887, mainly as an agency by means of which to divert water from the river and carry it to their lands. In order to do this, it was found necessary or convenient to take the water from the river at a point above the lands of the plaintiffs herein and carry it through a canal over the intervening lands of the plaintiffs and others to the Stevinson and Mitchell lands. The canal company obtained rights of way through said intervening

lands, made the canal thereon and by a dam in the river took water therefrom into the canal and carried it therein to the lands below. This diversion began in the year 1888. The plaintiffs' lands, at that time, all belonged to William C. Turner. In March, 1906, some three thousand acres of it were sold and conveyed to the Las Animas & San Joaquin Land Company, hereinafter designated the "Land Company."

On September 28, 1906, the plaintiffs began this action. The complaint alleges that for two years past the defendant, by means of said dam and canal, had been taking water from the river above plaintiffs' lands, carrying it through the canal to the lands below, not riparian to the river, and there discharging it; that it had no right to take from the river any greater flow than seventy-five cubic feet per second, at any stage, and no right at any time to take a quantity that would leave less than twenty-five cubic feet per second flowing down the river over its dam, but that it claimed the right to divert and carry below plaintiffs' lands a flow of five hundred cubic feet per second, and threatened and intended to do so. They prayed for an injunction to prevent the excessive diversion.

In its answer the defendant alleged that it had acquired by prescription the right to take from the river at said dam a flow of five hundred cubic feet of water per second when that quantity was then flowing, and to take the entire flow when there was less, and to carry the same through the canal to points below the plaintiffs' lands and there sell and distribute the same for use on other lands.

One of the important questions arising in the case is whether the use made by the defendant of the water it diverted, and which was adjudged to belong to it, was of a character adverse to plaintiffs and such as to give the defendant a prescriptive right to continue the diversion. The court found that ever since the year 1888, the defendant had been continuously diverting into the canal at the said dam 281 cubic feet per second of the water of the river and causing the same to run down the canal and to be applied to beneficial use as follows: It delivered seventy cubic feet per second upon five thousand six hundred acres of land for the irrigation thereof, one thousand four hundred acres of which were lands described in the complaint, as belonging to the plaintiff, Land Company, and four thousand two hundred acres thereof were lands owned by Miller & Lux, which said water was used for

the irrigation of said lands; it delivered to other lands of
Miller & Lux, five hundred acres in extent, ten cubic feet per
second; it delivered to seven hundred and fifty acres of land
belonging to the Sharon Estate fifteen cubic feet per second;
it delivered to two thousand five hundred acres of land belong-
ing to the Estate of Mitchell fifty cubic feet per second; it
delivered to four thousand acres belonging to Stevinson eighty
cubic feet per second, all of which water was used upon the
said lands, respectively, for the irrigation thereof, making the
total amount of two hundred and twenty-five cubic feet per
second actually put to beneficial use, and that the remaining
fifty-six cubic feet per second of the water so diverted was
necessarily lost by unavoidable seepage and evaporation in
transmission. It further found that the defendant made said
diversion for said uses openly, uninterruptedly, and under a
claim of right to do so, and adversely to the plaintiffs and all
other persons; that the defendant "took and appropriated said
quantity of 281" second feet of flowing water "for the pur-
pose and with the intention of supplying the same, for benefi-
cial purposes, to the inhabitants of the lands situated along the
line of and below the water in said canal, for the irrigation of
the land so situated, and for the sale, rental and distribution
by said defendant to all persons desiring to use the same";
that said lands constituted a "farming neighborhood"; that
the plaintiffs and their predecessors in interest at all times
knew that said quantity of water was being so diverted and
used under a claim of right; that never, prior to June 12, 1906,
did they deny or dispute said right; that many owners of
other lands along the canal, relying on the neglect and failure
of the plaintiffs to deny or dispute said right, obtained water
from year to year from the defendant, improved their lands
by planting trees, vines, and alfalfa, and irrigated the same
with water from said canal, and that the trees, vines, and
alfalfa would perish if deprived of said water.

The court also made a general finding that the "defend-
ant is the owner of and has the right to use and divert of the
water naturally flowing in the San Joaquin River" two hun-
dred and eighty-one second feet when that quantity is flowing
in the river, and the entire flow when there is less than two
hundred and eighty-one second feet. The respondent contends
that this general finding is supported by evidence of uses upon
other lands than those above set forth and particularly found,

and that this is sufficient to sustain the general finding. It is true that if the general finding was intended to be independent of the particular facts found, it would be upheld if there was enough evidence to sustain it, regardless of the legal effect of the particular facts. But this finding is not of that character. The findings clearly show that the two hundred and eighty-one second feet referred to in the general finding is made up of that mentioned in the particular findings, above recited, in which the court sets forth in detail the exact places where the water was used and the quantities used on each place and necessarily consumed in transmission, going to make up the two hundred and eighty-one second feet, and that the right to that quantity was gained solely by virtue of the delivery upon these lands and the use thereon of the respective quantities mentioned. It is therefore unnecessary to further consider the claim that there was evidence of adverse diversion and use upon other lands than those specifically mentioned.

The court further found that all of the plaintiffs' lands are and always have been situated along and bordering on the San Joaquin River and its various channels; that the waters of said river naturally flow and always have naturally flowed "to, upon, through, over and upon said lands, and all of said lands are and at all times have been riparian to said river."

Upon an analysis of the facts we have stated, it will be observed that the prescriptive right of the defendant, if any, to seventeen and one-half second feet of the water included in the water-right adjudged to it, that is, one-fourth of the seventy second feet, is based solely on the finding that, for the essential period of time, the defendant had taken seventeen and one-half second feet of water from the river into its canal, carried the same down the canal to lands of the said Land Company, and there delivered it upon one thousand four hundred acres of said land for the irrigation thereof, and that the same has been there used for that purpose upon the lands of the company. It is contended by plaintiffs that the four thousand two hundred acres of land belonging to Miller & Lux was also riparian to the river, and that the fifty-two and one-half second feet delivered from the defendant's canal upon that land and used to irrigate it was of the water to which that land was entitled by virtue of its riparian character. There is no finding that this four thousand two hundred acres is riparian to the river.

The finding above mentioned to the effect that all the lands of the plaintiffs were and always have been riparian to the San Joaquin River, is conclusive of the fact, so far as the respondent is concerned, upon this appeal. Consequently all that part of the respondent's argument directed to the proposition that said lands are not riparian, or based on that assumption, is unavailing and requires no further consideration.

We now come to the question whether or not the defendant has acquired title by prescription, as against the Land Company, to the seventeen and one-half second feet of water taken from the river into the canal of defendant and delivered upon the one thousand four hundred acres of riparian land belonging to the Land Company.

The owner of riparian land has the right to use the water of the stream. In order to obtain it, he has the right to go to a point on the stream above his land, with the consent of the abutting and intervening owners, and there take out the water and conduct it to his land. So long as he takes in this manner only his reasonable share of the water and uses it only on his riparian land, he is exercising his riparian rights and nothing more. (*Turner* v. *James,* 155 Cal. 92, [132 Am. St. Rep. 59, 17 Ann. Cas. 823, 22 L. R. A. (N. S.) 401, 99 Pac. 520]; *Rose* v. *Mesmer,* 142 Cal. 329, [75 Pac. 905]; *Charnock* v. *Higuerra,* 111 Cal. 480, [52 Am. St. Rep. 195, 32 L. R. A. 190, 44 Pac. 171].) As is said in *Charnock* v. *Higuerra,* it is frequently the case that he cannot conveniently or profitably bring the water to his land for irrigation thereof otherwise than by taking it out on other land above him. It is not claimed that the water so used on the one thousand four hundred acres was more than its appropriate share. The taking of water into the canal above, carrying it down to and delivering it upon the land of the Land Company for use by it thereon was not an act in itself hostile, adverse, or injurious to the Land Company with respect to that water. The canal passed through the land of the Land Company and it is conceded that no charge has ever been made by the defendant against the owners of the land for this water. It appears further that the defendant exercised no supervision whatever over the taking of this water by the Land Company. When the latter desired water from the canal for its land, it opened

the gates into the canal, of which there were several, and let the water out into its fields and it does not appear, nor is it claimed, that it ever asked leave of the defendant to do so. Apparently it was doing by means of this canal only that which by any available means it had a right to do; taking the water of the river for use on its riparian land. Our attention has not been called to any evidence indicating that the defendant ever denied its right to this water, or disputed that it was a riparian right. It is, therefore, clearly established that the taking was neither hostile nor injurious to the Land Company, so far as the water-right and the water itself is concerned, to the extent of the seventeen and one-half second feet used on the said one thousand four hundred acres.

It may be that by means of this continuous diversion of the water above the plaintiffs' land the defendant has acquired a right to divert it at that place. Such right may be of advantage to the defendant, since it may enable it the better to carry to the other places below the excess over and above that delivered to or taken by the Land Company. This question it is not necessary to consider. It may be that the parties have to some extent confused this right to an established place of diversion with the right to the water itself. The two are not dependent. And this appears to be the true solution of the difficulty. The defendant has the right to make its diversion at the place it has maintained so long and to insist that the seventeen and one-half second feet used by the Land Company shall also be taken out at that place and through said canal; but it has not acquired the right to take that water from the Land Company and use it elsewhere, nor indeed any right whatever to the use of that water.

With regard to the fifty-two and one-half second feet used on the land of Miller & Lux, the facts are not precisely the same. There is no finding that the Miller & Lux land is riparian to the river. We have not examined the evidence to ascertain whether it is riparian or not. It appears that before the defendant constructed its canal Miller & Lux granted to it a right of way over the Miller & Lux land for the canal, in consideration of which the defendant agreed that Miller & Lux should at all times have the right to have fifty cubic feet of water, of the natural flow of the canal at its current flow on a grade of six inches per mile when there was two hundred

of such cubic feet flowing in the canal, turned out to them upon said land along the canal through gates to be constructed by the defendant. It was further agreed that the rights of Miller & Lux, whether as appropriators, riparian proprietors, or otherwise, to the waters of the river should be in no wise impaired or affected by the agreement and that if the defendant should take water from the river, its taking should be based upon such rights thereto as it had prior to the making of the agreement. If the Miller & Lux land is also riparian to the river, as claimed, it may be that the use by it of the water taken through the canal under this agreement would also be attributable to the riparian right. Such use would be like that of any other riparian owner, not adverse to those above or below, but only the use in equal right with them of its reasonable share. This we cannot determine, inasmuch as there is no finding that said land is riparian. If it should turn out upon another trial that it is riparian, the rules above stated with regard to the one thousand four hundred acres of the Land Company would apply with equal force to the water used on the land of Miller & Lux under the said agreement. The defendant's canal would be a mere agency of Miller & Lux as riparian owner, and the effect on the Land Company's right to the water so used by Miller & Lux would be the same as if Miller & Lux had made and used the canal to carry said water to said land.

The findings and evidence suggest that perhaps similar questions may arise with regard to the use of the water applied upon the Stevinson land. It also appears to be, in part at least, riparian to the river. Having that character, there would attach to it the right to the reasonable use, as compared to other riparian lands, of the waters of the river. There is some evidence indicating that the defendant company was a mere agency of Stevinson to carry the water from the river to his land. If so, such taking may be to that extent an exercise of his riparian rights and not an appropriation by the defendant. The parties do not appear to have well understood the distinction, and in their testimony they generally use the word, "appropriation," in speaking of their right. If it should be found to be a riparian use, the question to be determined as to the water used thereon would not be with respect to a right by prescription, but would be confined to the inquiry whether the

water claimed for that land is its reasonable share of the water of the river. The answer alleges that several thousand acres of the land irrigated with the water taken by defendant is riparian to the river. It is uncertain, in that it does not describe the land referred to; it may be that of Miller & Lux or the Land Company, and not that of Stevinson. The findings do not state the character of the Stevinson land. It should be added that the answer does not allege that the taking by the defendant was a taking for use on riparian land, or in exercise of any riparian right pertaining to the land to which the water was to be applied. It alleges a taking for sale, rental, and distribution, or, in other words, an appropriation to public use, but it does not clearly appear in the evidence that it was offered for sale generally. All these matters can be ascertained upon a new trial, if proper pleadings are presented.

We add that even if the defendant had by adverse use, or in any other manner, acquired the title to the two hundred and eighty-one second feet of water, the judgment is too broad. The land of the Land Company lies on the line and within the flow of the canal of the defendant. If the defendant has furnished water from said canal for the irrigation of said land, as the court found, it would be entitled, under section 552 of the Civil Code, to have the supply of water continued upon the established rates and terms.

The award of two hundred and eighty-one second feet to the defendant was excessive by at least seventeen and one-half second feet, so far as the land company is concerned. It is possible that it was also excessive so far as it included the right to take from Miller & Lux the fifty-two and one-half second feet, and the fifteen second feet from the Sharon land which was taken under an arrangement similar to that relating to the Miller & Lux land. The Turner estate is, or may be, interested in these questions. It is possible that the use of the water on the lands of the Land Company, Miller & Lux, and the Sharon Estate, all of which are adjacent to the Turner land, or nearer to it than the Stevinson land, would be less detrimental to the Turner lands than its use on lands below it, and more remote from it. We therefore deem it advisable to sustain the appeal as to both plaintiffs.

The part of the judgment appealed from is reversed and the cause remanded for a new trial of the issues involved in the part of the judgment reversed.

Sloss, J., Angellotti, J., Lorigan J., Henshaw, J., and Melvin, J., concurred.

Rehearing denied.