MORLEY CONSTRUCTION CO. ET AL. *v.* MARYLAND CASUALTY CO.

No. 325. Argued January 8, 1937.—Decided February 1, 1937.

---

*Mr. Martin J. O'Donnell,* with whom *Mr. William Buchholz* was on the brief, for petitioners.

*Mr. Spencer F. Harris,* with whom *Messrs. John C. Grover, Paul G. Koontz, George F. Cushwa,* and *Roger J. Whiteford* were on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The power of an appellate court to modify a decree in equity for the benefit of an appellee in the absence of a cross-appeal is here to be admeasured.

Morley Construction Company, a petitioner in this court, made a contract with the United States, acting by the Veteran's Administration Department, for the construction of a veterans' hospital at Batavia, New York. In conformity with statute (40 U. S. C. § 270) it gave a bond for the completion of the contract and for the payment of all bills for material and labor, the respondent Maryland Casualty Company signing the bond as surety. During the progress of the work, the contractor found itself in need of a loan of money to enable it to go on. Accordingly a supplementary agreement was made between the contractor and the surety to relieve the situation. By that agreement, dated April 28, 1933, the contractor agreed to deposit in a designated trust company in Buffalo $5,000 to be used in the performance of the work and to deposit in the same account for the same purpose all moneys received from the United States as payments upon the contract. The surety agreed to deposit in the same account $5,000 as a loan to be secured by the contractor's note, and additional moneys sufficient to pay the present and future bills of plasterers, amounting, as the evidence shows, to $5,700. The contractor and the surety were to have joint control

of the account, and no moneys were to be withdrawn therefrom without the approval of the surety by designated representatives, the approval to be indicated upon the check or draft in writing.

Following this supplementary agreement, the contractor went on with the work, and brought it to completion. The surety made the first payment of $5,000 in accordance with its promise but refused to pay the $5,700 owing to the plasterers. In the meantime a series of payments became owing from the Government upon estimates of value in advance of completion and acceptance. Warrants for these payments were forwarded by the Government to the trust company in Buffalo to be placed in the joint account, notice having been given by the contractor to issue them accordingly. However, a different course was followed when the final payment became due. Apparently through inadvertence, the Government sent a warrant for that payment ($59,780.82) to the contractor itself at its office in Kansas City, Missouri. The contractor endorsed the warrant, delivered it to the Merchants Bank of Kansas City, one of the petitioners in this court, and directed the bank to issue a cashier's check for a like amount to the order of the contractor's president. The bank made out the check, but held it to await the payment of the warrant, which it deposited in a Federal Reserve Bank to be forwarded, in the usual course of collection, to the Treasury at Washington. Neither check nor warrant has been paid as a consequence of an injunction obtained by the respondent.

Upon learning from the Veterans' Administration Department of the transmission of the warrant, the surety began two suits, one in the District of Columbia, where the payment of the warrant was stayed by an injunction, the other the suit at bar. It recounts in its complaint the facts or most of them already stated in this opinion,

adding thereto that outstanding bills for more than $100,000 are covered by its bond. It says that it is entitled to the specific performance of the supplementary agreement and to a decree depositing the warrant in the trust company at Buffalo to be applied upon the joint account. It says also that by reason of the unpaid bills of materialmen and laborers there is a duty on the part of the contractor to exonerate the surety from loss or liability and to apply the warrant to that purpose. Finally, it makes claim to a right of subrogation to the position of the contractor over against the Government, a claim which apparently has been abandoned and will not engage us further. The bill of complaint ends with a prayer for relief appropriate to the several theories of liability put forward by the pleader, the theory of specific performance, the theory of exoneration, and the theory of subrogation. To render the relief effectual, the bank in Kansas City was joined as a defendant.

The District Judge held that the surety was not entitled to the specific performance of the agreement, having failed to pay the plasterers and being therefore in default itself. He held, however, that apart from any agreement the contractor was subject to a duty to exonerate the surety from present liabilities. True, there was no purpose on the part of the contractor to divert the proceeds of the warrant from the uses of the contract. As to this the finding is explicit. Even so, a cause of action for exoneration does not include among its elements the presence of a wrongful purpose. *Glades County* v. *Detroit Fidelity Co.,* 57 F. (2d) 449; *West Huntsville Cotton Mills* v. *Alter,* 164 Ala. 305; 51 So. 338; *Pavarini* v. *Title Guaranty & Surety Co.,* 36 App. D. C. 348; *Hutchinson Grocer Co.* v. *Brand,* 79 Kan. 340; 99 Pac. 592. The decree conforms to the findings in its distribution of relief. It adjudges the complainant to be entitled to exoneration but not to specific performance.

The proceeds of the warrant are to be placed in a bank to be chosen by the contractor, the deposit to be "designated as a special trust fund for the payment of bills for labor and material used on the United States Veterans Hospital in Batavia, New York." No provision is made that the surety, or indeed any one other than the contractor, shall have any control thereof.

From that decree the contractor appealed to the Circuit Court of Appeals for the eighth circuit. There was no cross-appeal by the surety. The Court of Appeals states in its opinion, "We are in grave doubt whether exoneration can properly be granted." Preferring by reason of that doubt to put its decision on some other ground, it concludes that there should be specific performance of the supplementary agreement. It concedes that the surety is in default for failing to live up to the agreement strictly, but it finds that the default was not unconscionable or fraudulent, and that a court of equity in its discretion may overlook an unsubstantial wrong. Recognizing the necessity of modifying the decree if exoneration is to be exchanged for specific performance, the opinion states that "an injunction against using the moneys except as agreed upon, and an order to place said moneys when received in the joint account and disburse the same in payment of just claims for labor or materials, would meet the requirements and rights of plaintiff and would not be impossible of performance" and that "a decree along such lines should be granted by the trial court." 84 F. (2d) 522, 526. Accordingly, the mandate of the appellate court provides that the cause be remanded to the District Court with directions to modify its decree in accordance with the views expressed in the opinion. We granted certiorari to fix the measure of relief available to a non-appealing suitor.

The substitution of specific performance for exoneration at the instance of the surety was not an affirmance

of the decree below, as if the reasons only had been changed with the decision standing firm. Alike in substance and in form there was a modification of the decree itself, the facts being found anew and differently, the law declared anew and differently, and the relief remodeled and adapted to the new law and the new facts. Without a cross-appeal, an appellee may "urge in support of a decree any matter appearing in the record although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." *United States* v. *American Railway Express Co.*, 265 U. S. 425, 435. What he may not do in the absence of a cross-appeal is to "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *Ibid.* The rule is inveterate and certain. *Canter* v. *American Insurance Co.*, 3 Pet. 307, 318; *Chittenden* v. *Brewster*, 2 Wall. 191, 196; *The Maria Martin*, 12 Wall. 31, 40, 41; *Field* v. *Barber Asphalt Co.*, 194 U. S. 618, 621; *Landram* v. *Jordan*, 203 U. S. 56, 62; *Union Tool Co.* v. *Wilson*, 259 U. S. 107, 111; *Peoria & Pekin Union Ry. Co.* v. *United States*, 263 U. S. 528, 536; *Langnes* v. *Green*, 282 U. S. 531, 538; *Alexander* v. *Cosden Co.*, 290 U. S. 484, 487. Findings may be revised at the instance of an appellant, if they are against the weight of evidence, where the case is one in equity. This does not mean that they are subject to like revision in behalf of appellees, at all events in circumstances where a revision of the findings carries with it as an incident a revision of the judgment. There is no need at this time to fix the limits of the rule more sharply. "Where each party appeals each may assign error, but where only one party appeals the other is bound by the decree in the court below, and he cannot assign error in the

appellate court, nor can he be heard if the proceedings in the appeal are correct, except in support of the decree from which the appeal of the other party is taken." *The Maria Martin, supra.*[*]

The surety laid claim to relief upon the basis of a contract, and to other relief by force of an equitable doctrine independent of contract. The decree of the District Court rejected the first claim because the contract had been broken, and accepted the second because the breach was then irrelevant. The decree was responsive to the claim that had been accepted, and not to any other. If there was to be specific performance of the contract, the surety, together with the contractor, would control the distribution of the fund, for so the parties had agreed. If there was to be exoneration and nothing more, the contractor or perhaps the court would control the application and the surety would stand aside. *Stulz-Sickles Co.* v. *Fredburn Construction Corp.,* 114 N. J. Eq. 475, 478; 169 Atl. 27; cf. *Glades County* v. *Detroit Fidelity Co., supra;* Arant, Suretyship, pp. 318, 319 and cases cited. Exoneration "does not entitle the surety to custody or control of the fund." *Stulz-Sickles Co.* v. *Fredburn Construction Corp., supra.* The decision of the Court of Appeals puts an end to this nice adjustment of the relief to the law and of the law to the facts as found. A decree appropriate to exoneration is annulled, and one appropriate to specific performance is given in its place. This is to find the facts anew and differently, for the trial judge

---

[*] State decisions on the question of the review of findings at the instance of an appellee who has not taken a cross-appeal exhibit a wide variance of procedure. For cases of the stricter type, see *Turner* v. *East Side Canal Co.,* 168 Cal. 103, 108; 142 Pac. 69; *Clark* v. *Corser,* 154 Minn. 508; 191 N. W. 917; *Cox* v. *Stokes,* 156 N. Y. 491; 51 N. E. 316; *Werdebach's Estate,* 280 Pa. 26; 124 Atl. 268. With these contrast the following: *Bullman* v. *Cooper,* 362 Ill. 469; 200 N. E. 173; *Wyatt* v. *Manning,* 217 Iowa 929; 250 N. W. 141; *Oppenheimer* v. *Bank,* 97 Tenn. 19; 36 S. W. 705; *Huntington* v. *Love,* 56 Wash. 674; 106 Pac. 185.

had held, at least by implication, that the breach by the surety, viewed in the light of all the circumstances, was something more than unsubstantial. It is to find the law anew and differently, for the trial judge had held that a surety chargeable with such a breach was not entitled to a decree upon the footing of the contract. Even more important, it is to give a new measure of relief, for the trial judge had ruled that the fund was not to be held upon the restrictions stated in the contract, but upon different restrictions originating in the conscience of the Chancellor. True, the relief proper to the theory accepted at the trial is almost as favorable from the viewpoint of the protection of the surety as the one adopted on appeal, though distinctly less burdensome from the view-point of the principal. Exoneration is not the same as specific performance, but it is not very different, and may be nearly, if not quite, as good. This is surely not a reason why an appellate court should be at liberty to treat the two as interchangeable. One might as well say that at the instance of a non-appealing plaintiff a judgment for specific performance could be made to take the place of one for the recovery of damages.

The decree should be reversed and the cause remanded to the Court of Appeals to pass upon the question, not yet definitively answered, whether relief in the form of a decree for exoneration is proper in the circumstances, and for other proceedings in accord with this opinion.

*Reversed.*