## KOOL KOOSHION MFG. CO. v. MITCHELL MFG. CO.
### No. 11144.

Circuit Court of Appeals, Eighth Circuit.
Feb. 25, 1939.

Rehearing Denied March 23, 1939.

Clarence B. Des Jardins, of Washington, D. C. (John H. Halley, of Oklahoma City, Okl., on the brief), for appellant.

Edwin E. Huffman, of St. Louis, Mo. (Daily & Woods, of Fort Smith, Ark., on the brief), for appellee.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

This is an action for patent infringement by the assignee of Harley No. 1,541,-212 and Harley No. 1,541,213. From a decree adjudicating validity but non-infringement, plaintiff appeals.

Each of these patents is a combination patent and covers a "cool cushion and seat". Patent No. 1,541,212 is a combination of three elements: a fabric cover, an inside ring member to preserve the shape of the cover, and an inside spring member to distend the fabric cover. Patent No. 1,-541,213 differs only in that the ring member is "encircled by a spirally wound member and having its ends united." The claims involved are claim 3 of No. 1,541,212 and claim 12 of No. 1,541,213. Claim 12 is more limited than claim 3. In the brief of appellant is the following: "However, the interests of the public are not prejudiced by any similarity of these two claims, since the patents issued on the same day, will expire on the same day, and are owned by the same assignee, the plaintiff. Since the pat-

ents issued on the same day, it is not possible to determine which is prior to the other and the plaintiff, therefore, may elect on which of the two patents it desires to stand. In this case, plaintiff elects, as it did in the trial Court, to rest its rights on patent No. 1,541,212. If the Court should believe that claim 12 of patent No. 1,541,213 is for the same invention as claim 3 of patent No. 1,541,212, then it should adjudge that claim 12 of patent No. 1,541,213 is legally inoperative." Because of this position, appellant confines argument to claim 3 of No. 1,541,212. We shall, of course, do likewise.

The primary purpose of this patent was to do away with the discomfort from heat and perspiration of remaining seated in an automobile during warm weather, by constructing a cushion that could be placed on the car seat and seat back and which would allow a free circulation of air between the body of such person and the automobile seat and back and, also, to maintain that air space in a comfortable, practical manner.

The invention, disclosed in the drawings and specifications, consists of two similar and connected portions (one for the seat, the other for the back of automobile seat). Each portion comprises a flat porous fabric bag containing (1) a convoluted coil spring assembly for extending the sides of the bag (thus forming the air space) and (2) a circumscribing and stabilizing metal ring (to give such stability as was necessary to the entire structure). The convoluted coil spring is a spirally wound coil spring, usually made of small steel wire, with the coils of the spring substantially vertically disposed with respect to the plane of the portion or section, and may be spaced apart to form a supporting structure which will permit the free circulation of air through this spring member, and to give the proper strength to support the body, and in which the convolutions (of the spring member) are free to move, relative to each other, in order to conform readily to the body and give flexibility and cushioning effect to the structure. The convolutions of the spring member reside substantially in a common flat plane, except when forced out of such plane by pressure from without. The forming of the convoluted member usually starts at the center, and the coil spring is wound upon itself about a common axis which forms the center of the seat and back sections until the proper number of

convolutions is secured to give the diameter required.

In order to prevent each section from buckling, and to cause it to maintain its shape, and the back to stand up, an outer member is specified to stiffen the periphery of each section to a sufficient degree to give stability, but not to be unyielding to the extent of inconveniencing the person seated. This member is termed a "rim" and originally is specified and shown as a spirally wound member but may be composed of a wire of larger diameter and wound much closer. In the commercial structure it is more of the nature of a ring, or circular rod, "separately formed and independent". In order to discharge its function it is necessarily passed through the last convoluted coil of the patented structure. This, however, does not make it dependent, either in formation or otherwise, upon the spring element.

Claim 3 is as follows: "An article of manufacture comprising an enclosure of a plurality of fabric members, means for holding the enclosure distended and allow free circulation of air therein and means comprising a separately formed and independent ring circumscribing the holding means for giving stability to the structure."

The issues presented here are (1) validity of claim 3, (2) scope of claim 3 and (3) infringement.

Appellee urges that claim 3 is invalid as being indefinite in that it specifies no definite fabric enclosure nor any definite means of extending and holding extended the cushion. There is serious question whether this criticism is not well founded under the doctrine of General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 370-375, 58 S.Ct. 899, 82 L.Ed. 1402. However, it is doubtful whether this issue is open to us. This doubt is not from any hesitation as to the power of this Court to pass upon validity of patents where the matter of invalidity sought to be presented here was before the trial court even though the matter is urged here by an appellee. Herman Body Co. v. St. Louis Body & Equipment Co., 8 Cir., 46 F.2d 879; Oliver-Sherwood Co. v. Patterson-Ballagh Corp., 9 Cir., 95 F.2d 70, 72, certiorari denied 304 U.S. 573, 58 S.Ct. 1042, 82 L.Ed. 1537; Mills Novelty Co. v. Monarch Tool & Manufacturing Co., 6 Cir., 49 F.2d 28, certiorari denied 284 U. S. 662, 52 S.Ct. 37, 76 L.Ed. 561. Also, see Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325, 81

L.Ed. 593. Our doubt is as to whether the ground for invalidity now urged is within the pleadings and was ever presented to the trial court. Were it necessary for disposition of this appeal to determine this issue of invalidity, we would do so. However, we are convinced that there was no infringement of claim 3 (if valid) and, therefore, we prefer to avoid the above doubtful situation and to resolve the appeal upon the ground of non-infringement.

The accused device has the three elements of fabric enclosure, distending means and the stabilizing member. The difference between this device and that made under the patent is in the distending means. Both employ coil springs. The difference is in the arrangement of these springs.

In the accused device, there is a series of many springs arranged in interlocking parallel rows. The spring ends are fastened, at opposite sides of the seat, to the stabilizing ring. Also, this ring extends through the length of the two outside row springs. The effect of this arrangement is a mat of closely interlocking and partially extended springs.

In the patent device, there is only one coil spring which is wound concentrically on the same plane with the stabilizing ring through the outside row.

This difference in arrangement necessarily results in some difference in function. It is possible that the accused device will better sustain weight and, if so, it will more nearly preserve an air space. On the other hand, it is certain that it will lack the adaptability and, therefore, the comfort of the patented device.[1]

Since there is a difference in construction resulting in a difference in degree of function, the scope of claim 3 becomes determinative of infringement vel non. Obviously, the wording of claim 3 is broad enough to cover the accused device. Whether that wording is sustainable in view of the revelations of the patent and the state of the art is our problem.

The patent teaches only a "spirally wound coil spring" which is called "the convoluted member". Throughout the specifications, the repeated reference to this member is always as "convoluted", "convolutions of the member" and the like. The only method of forming this extending member or element is described in the specifications thus: "The forming of the convoluted member F usually starts at the center and the coil spring is wound upon itself about a common axis which forms the center of the section A or B, and until the proper number of convolutions is secured to give the diameter required." The stabilizing ring is employed "to stiffen the periphery" to prevent "buckling", maintain shape and to hold the back section up. If we read this claim in connection with the two other claims we find each of them describes the extension member as "a convoluted member". The drawings are all of a convoluted coil spring. In short, the teaching of the patent is only of a convoluted coil spring extension member or element.

Even so, appellant contends it is entitled to a range of equivalents which will cover all use or arrangement of coil springs as an extending member. This depends upon the effect of the prior art. Coiled wires were old in mattresses or bed springs (Perkins No. 109,446, Peters, No. 124,286, Jeffery No. 426,022, Campbell No. 482,337, Smith No. 438,956, Franz No. 1,213,858), in mats (Stover No. 361,194, Guilleaume No. 375,321, Rogers No. 408,047), and in chairs and

[1] The patentee testified as follows:

"As a matter of fact do you contend that the spring elements in these cushions you are manufacturing, like Exhibits '1' and 'G', should have any yielding function themselves—function as yielding springs, yielding to the weight of the man sitting on them? A. Should have any?

"Q. Yes. A. Yes.

"Q. Do you intend them to have any yielding effect? A. Yes.

"Q. In other words, in addition to providing an air space you are intending to provide something that would yield to the weight? A. Be more comfortable.

"In other words, you are going to add, so far as the person sitting down is concerned, you are going to add the resiliency of your cushion to the resiliency of the regular automobile seat cushion that he puts it on. Is that right? Make the whole thing softer? A. Make it more comfortable.

"Q. Do you understand that these parallel interwoven coils in the wire inserts that are used in the Mitchell cushion—I am referring to defendant's Exhibit '3', for identification, are supposed to yield to the weight of the wearer? A. No, I don't think they are.

"Q. They are perfectly firm? A. That is right.

"Q. Then that don't add anything to the resiliency of the automobile cushion, do they? A. I should not think so."

40

couches. (Quinn No. 611,274, Evans No. 621,642, Bonnell No. 630,967, Loftus, No. 829,978). Also, coil springs were old as extension members (Weston No. 264,007) and for ventilation members (Weston No. 264,007, Kerr No. 1,356,493).

A study of the above patents convinces that the shape and the arrangement of coil or other springs is important; that use of coil springs even as extension members for ventilation purposes is old; and that the arrangement of coil springs used in the accused device is old (Peters No. 124,286 and Campbell No. 482,337, also see Perkins No. 109,446 and Quinn No. 611,274 as suggestive).

· It is evident that, as to use and arrangement of coil springs, this patent came into a crowded art. It is also clear that almost the exact arrangement used in the accused device was old. It is also clear that this patent did not directly teach or suggest the arrangement employed in the accused device. Also, the suggestion of a coil spring as an extension member for ventilation is old. In this situation of the prior art and of the teachings of the patent, we think the meaning of this claim cannot be stretched to include the accused device.

Without examination of the validity of this claim but treating it as valid, we find no infringement thereof.

The decree is affirmed.