Joe Bailey **EMERSON**, Appellant,

v.

**LABOR INVESTMENT CORPORATION,**
a corporation, Appellee.

No. 6333.

United States Court of Appeals
Tenth Circuit.

Dec. 8, 1960.

Charles R. Nesbitt, Oklahoma City, Okl., for appellant.

James E. Grigsby, Oklahoma City, Okl., for appellee.

Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.

LEWIS, Circuit Judge.

Appellant brought action for damages for breach of an option contract for the sale and purchase of appellee's capital stock, alleging federal jurisdiction by reason of diversity of citizenship. Appellee, by answer, admitted the breach in that it refused to issue stock under the stock option, but asserted that the agreement in its inception was violative of 18 O.S.A. § 1.46 [1] and further alleged

---

1. 18 O.S.A. § 1.46.
    a. Subject to any further limitations or restrictions contained in the articles of incorporation, every domestic corporation may grant, but only in connection with the allotment of shares or the issuance of bonds or other securities and only to the persons to whom such allotments or issuance is made, rights to convert such shares or securities thus allotted or issued into shares, or options to purchase or subscribe for shares, of

both a lack of consideration and an accord and satisfaction.

The District Court for the Western District of Oklahoma found the stock option valid and in full compliance with the Oklahoma statute, but found that contract rights were compromised for consideration and that the failure of appellant's promised performance was so substantial as to justify rescission by the appellee. Appellant asserts on appeal that the evidence does not justify the court's rulings against him and that appellee is precluded by its failure to take a cross-appeal from seeking affirmance of the judgment by appellate examination of the ruling concerning the Oklahoma statute.

In view of our conclusion that the stock option rights granted to the organizers of appellee were in fact and law violative of the Oklahoma statute, we deem it unnecessary to delineate evidence of occurrences subsequent to the execution of that contract or examine the value of the consideration promised or given.

Labor Investment Corporation was organized March 26, 1956, for the purpose of raising capital for the formation of a life insurance company to be managed as a wholly-owned subsidiary. Appellant, one of seven organizers, subscribed for 5,000 shares of stock, for which he paid $5,000 in cash. With the qualifying 28,000 shares subscribed by the incorporators, the company through its shareholders elected its board of directors, including appellant, and proceeded to pass resolutions which would enable it to make public offering of its stock.

At this first meeting, it was resolved that the corporation should enter Stock Option Agreements [2] with each of seven incorporators. The consideration given

---

any class or classes upon such terms and conditions as may be provided in such articles, and, in the absence of such provisions in such articles, upon such terms and conditions as may be provided by a resolution of the shareholders, or by a resolution of the board of directors duly authorized by a resolution of the shareholders.

2. "Stock Option Agreement
"Know All Men By These Presents:
"This Agreement, made and entered into this 21st day of March, 1956 [The parties agree that the printed record is in error and that the contract actually reads 28th day of March] by and between Labor Investment Corporation of Oklahoma City, Oklahoma, a corporation organized and existing under the laws of the State of Oklahoma, hereinafter referred to as First Party, and Joe B. Emerson of Oklahoma City, Oklahoma, hereinafter referred to as Second Party, Witnesseth:

"Part I
"For and in consideration of services rendered by Second Party in the organization and formation of First Party, and services to be rendered by Second Party in the completion of the organization and formation of First Party, namely the sale of 200,000 shares of Class A Non-Voting Common stock and 50,-000 Shares of Class B Voting Common stock of First Party pursuant to the

Securities Sales Agreement of this even date, copy of which is attached hereto and made a part hereof, and the sum of Ten Dollars ($10.00) paid to First Party by Second Party and other good and valuable consideration the receipt whereof is hereby acknowledged, First Party grants to Second Party the exclusive right, at his option, for and during the period of four (4) years from the date hereof, to purchase fifty thousand (50,000) shares of Class B Voting Common capital stock of the First Party for the sum and price of Two Dollars ($2.-00) per each share, which price shall be paid prior to delivery of the certificates of shares purchased.

"Part II
"It is agreed that Second Party may elect to purchase all or any number of said fifty thousand (50,000) shares from time to time or at any time within said option period of four (4) years, which election or elections shall be signified by written notice thereof, served upon First Party together with the payment for the amount of shares so purchased; and thereafter it shall be the obligation of First Party to deliver to Second Party a duly executed certificate of said purchased shares. * * *"
(This agreement was later amended concerning the classification of stock and its proportionate availability, but this amendment is of no consequence to this appeal.)

and to be given by all individuals was therein recited to be "the time, effort and expense incurred by said persons in the pre-organization and organization of the Corporation and other considerations," and additionally as to the four men charged with the sales of the corporate stock, among whom was appellant, "the consummation of the said Securities Sales Agreement."

Some of the stock option rights have been exercised and stock issued under the Emerson agreement. Also, portions of the option rights were assigned to various individuals and the assignments were accepted and recorded by the corporation.

Disharmony among the directors brought about the resignation of appellant and another and resulted in the repudiation of the option agreement by the corporation and the present suit.

Although the appellee did not take a cross-appeal, it urges that the clear reading of the Oklahoma statute, cited supra footnote 1, justifies the court's dismissal of the cause although the court specifically decided that the options were granted in conformity to 18 O.S.A. § 1.46. Appellant contends that since the issue was decided adversely to appellee in the findings and judgment of the District Court the company cannot attack the findings and decree of the lower court without having filed a cross-appeal.

Appellant relies upon the rule that without a cross-appeal, an appellee may not seek to enlarge his own rights nor diminish the rights of appellant but must content himself with argument to justify the findings in his favor, citing Timken-Detroit Axle Co. v. Alma Motor Co., 3 Cir., 163 F.2d 190; Hall v. Keller, 5 Cir., 180 F.2d 753, certiorari denied 340 U.S. 818, 71 S.Ct. 48, 95 L.Ed. 601; Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593. With ipse dixit assertions that appellee is here trying to overthrow findings by the trial court and enlarge its own rights without proper hearing on the matter, appellant ignores the distinguishing language of the Morley case at 300 U.S. at page 191, 57 S.Ct. at page 327:

"* * * Without a cross-appeal, an appellee may 'urge in support of a decree any matter appearing in the record although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.' United States v. American Railway Express Co., 265 U.S. 425, 435 [44 S.Ct. 560, 68 L.Ed. 1087]. What he may not do in the absence of a cross-appeal is to 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below.' * * * *"

■ The judgment here is not divisible; its sole effect was to dismiss the plaintiff's action and discharge the defendant with its costs. Further, the findings of fact are complete and in accord with the evidence and the issue raised by the appellee is concerned with the application of the facts to the law as indicated in the court's conclusions.

■ The appellant views the trial court's short analysis of the law, conveyed by letter to counsel but not incorporated in its entirety into the findings, as setting in conflict the findings of the final judgment. The trial court wrote:

"1. That the stock option agreement was not void because in contravention of 18 O.S. Sec. 1.46(a). That statute allows stock options to be granted only (1) '* * * in connection with the allotment of shares * * *' and (2) '* * * only to the persons to whom such allotments (sic) * * * is made.' The stock options here involved were granted in connection with the original allotment of shares and were granted to original share subscrib-

ers obtaining shares under the allotment. Therefore, the stock options were valid, being in full compliance with the statute."

The findings as signed by the trial court show, at least by inference and in accordance with the evidence, that the stock of the organizers was subscribed prior to the date of the stock option agreements, March 28, 1956. If there be conflict between these two statements of the court, the formal findings must control in the absence of an indication of fraud perpetrated on the court or other unusual and extenuating circumstances. The sole question, therefore, is whether the grant of stock options, subsequent to incorporation and authorized by the corporation to reward its incorporators, is an option made in connection with the allotment of shares.

█ Appellee seeks no relief which was not granted it in the court below and properly may raise any issue which was there considered even though it asserts that the court was in error, Standard Acc. Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794; Le Tulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355.

██ The Oklahoma Supreme Court has not had occasion to pass upon or construe the wording of the statute here under examination and Oklahoma appears to be presently unique in retaining this restriction against the granting of

options, although numerous states have attempted to prevent in one manner or another the notorious abuses provoked by the temptation of the option device. See Draftsman's Note, 18 Oklahoma Statutes Annotated, p. 420. But the plain wording of the statute compels the conclusion that options to purchase shares of stock can only be granted by the corporation in response to and fulfillment of a stock purchase subscription or pursuant to the declaration of a stock dividend, 18 O.S.A. § 1.2(12).[3] In other words, the definition of "allotment" contained in 18 O.S.A. § 1.2(12) and the use of the phrase "only in connection with the allotment of shares or the issuance of bonds or other securities" in 18 O.S.A. § 1.46 prevent the corporation from entering an agreement such as this to compensate its officers or incorporators for past or future services, absent other considerations creating a situation within the definition of allotment.

Appellant urges however that the action taken was ratified by both the board of directors and all the shareholders and that the corporation has accepted the benefits of the contract and thus is precluded by 18 O.S.A. § 1.29[4] from asserting the defense of ultra vires.

This statute is concerned only with the definition of ultra vires to be drawn from the papers of the corporation's inception. Although an illegal or unlawful act is sometimes said to be ultra vires the cor-

---

3. "As used in this Act, unless the context clearly indicates that a different meaning is intended:

"(12) 'Allotment' means the apportioning of shares to a subscriber in response to his subscription, or to a shareholder pursuant to the declaration of a share dividend or upon an exchange, conversion, splitup, subdivision, or other adjustment of shares."

4. "a. In no event shall it be asserted in any action that any contract, conveyance, undertaking, or tortious act, executed or executory, is beyond the purposes of a corporation expressed in its articles of incorporation, if:

"(1) Such contract, conveyance, undertaking, or tortious act was authorized or

ratified by its board of directors or shareholders,

"(2) With knowledge, actual or constructive, of the facts, the benefits or any part thereof of such transaction have been accepted or retained by the parties so asserting; or

"(3) The articles of incorporation of such corporation be ambiguous as to the scope of its corporate purposes and under any reasonable interpretation of the articles of incorporation as relied upon by any third party, or his privy, the transaction in question would have been authorized.

"This Section shall not be construed to validate or prohibit a defense against an illegal or immoral contract, prohibited by law or by the public policy of the State."

**950**

porate powers, see 13 Am.Jur., Corporations, § 755, the Oklahoma statute is clear that it should not be applied to any matter prohibited by law. It is of no significance that the contract was not immoral nor would it be unlawful except for the prohibition imposed by the Oklahoma legislature. The contract is void and incapable of ratification. United Order of Good Samaritans v. Meekins, 155 Ark. 407, 244 S.W. 439, 28 A.L.R. 89; In re Mutual Guaranty Fire Ins. Co., 107 Iowa 143, 77 N.W. 868.

The judgment is affirmed.