**ALMA MOTOR COMPANY**

v.

**The UNITED STATES.**

No. 48716.

United States Court of Claims.

Oct. 4, 1955.

I. Joseph Farley, Detroit, Mich., for plaintiff. Farley, Forster & Farley, Detroit, Mich., were on the brief.

William W. Fleming, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This is a suit for patent infringement. Plaintiff alleges that its patent 2,145,089 was infringed by the United States through its War and Navy Departments which caused to be manufactured, purchased, and used, during the years 1942 to 1946, numerous trucks and vehicles equipped with front wheel drive constructions. It is contended that these constructions embodied inventions covered by claims 4 and 10 of plaintiff's patent.

Patent 2,145,089 was issued to Karl D. Kysor on January 24, 1939, on an application filed on April 20, 1936, and is entitled "Front Wheel Drive For Automotive Vehicles." Title to this patent is not in question since the parties agree that the plaintiff is the owner of the entire right, title, and interest to the Kysor patent in suit.

In general, the patent in suit discloses a construction comprising a front axle assembly employing a constant velocity universal joint between an axle shaft and a stub shaft. A wheel spindle, housing the stub shaft, is pivotally supported by a housing for the axle shaft, and a front wheel is rotatably secured on the wheel spindle. The axis of the pivotal connection between the wheel spindle and the housing for the axle shaft extends through the center of the universal joint and at an angle toward the wheel tread. The wheel is driven by the stub shaft. This construction provides a full-floating axle front wheel drive wherein none of the vehicle weight is carried by the axle shaft or the stub shaft.[1]

The two claims in suit are as follows: Claim 4—

1. A front wheel drive for automotive vehicles comprising

2. an axle housing having a semi-spherical end,

3. a wheel spindle having a semi-spherical end,

4. a wheel mounted on the spindle,

5. pivot pins connecting the semi-spherical ends of the axle housing and wheel spindle,

6. a shaft rotatably mounted in the axle housing,

7. a stub shaft rotatably mounted in the wheel spindle,

8. a universal joint connecting the axle shaft and stub shaft,

9. a ball socketed between the ends of the axle shaft and stub shaft and within the semi-spherical ends of the axle housing and wheel spindle, the pivot pins between the semi-spherical ends of the axle housing and the wheel spindle preventing separation of the parts,

10. and means for adjusting the stub shaft toward the axle shaft to *firmly engage the ball* between the ends of the axle shaft and the stub shaft and the axis of the pivot pins extending through the center of the ball and at an angle toward the wheel tread. [Italics supplied.] Claim 10—

1. A front wheel drive for automotive vehicles comprising

2. an axle housing having a semi-spherical end,

3. an axle shaft therein,

4. a wheel spindle having a semi-spherical end *engaging over* the semi-spherical end of the axle housing,

5. a stub shaft housed by the wheel spindle,

6. a wheel and a tire supported by the spindle,

7. pivot pins supported in the semi-spherical end of the wheel spindle and pivotally engaging the semi-spherical end of the axle housing,

8. a universal joint connecting the axle shaft and stub shaft positioned within the semi-spherical end of the axle housing, the center point of the universal joint being at one side of the plane occupied by the inner side of the wheel and the axial line extending between the

---

1. Finding 4 contains a more detailed description and diagram of the construction.

pivot pins passing through the center of the universal joint and intersecting the tire adjacent the road surface,

9. and *adjustable* means preventing relative longitudinal movement of the axle shaft and the stub shaft to constantly maintain the turning center of the universal joint on the axial line extending between the pivot pins. [Italics supplied.]

We agree with the commissioner's finding 6 that claim 10 is invalid since all the elements listed are disclosed in prior patents. Elements 1 through 8 of claim 10 are clearly disclosed in the United States patent to B. W. Keese, No. 1,995,987, issued March 26, 1935. The Keese patent discloses a front wheel drive comprising an axle housing having a semi-spherical end, an axle shaft therein, a wheel spindle having a semi-spherical end engaging over the semi-spherical end of the axle housing, a stub shaft housed by the wheel spindle, a wheel and tire supported by the spindle, pivot pins pivotally engaging the semi-spherical end of the wheel spindle and supported in the semi-spherical end of the axle housing, a universal joint connecting the axle shaft and the stub shaft and positioned within the semi-spherical end of the axle housing, the center point of the universal joint being at one side of the plane occupied by the inner side of the wheel, and the axial line extending between the pivot pins passing through the center of the universal joint and intersecting the tire adjacent the road surface, and means, cap, bolt, sleeve, and flange, preventing relative longitudinal movement of the axle shaft and the stub shaft to constantly maintain the turning center of the universal joint on the axial line extending between the pivot pins.

It is noted that element 7 of claim 10 of the patent in suit discloses pivot pins *supported in* the semi-spherical end of the wheel spindle and *pivotally engaging* the semi-spherical end of the axle housing while the Keese patent discloses pivot pins *pivotally engaging* the semi-spherical end of the wheel spindle and

*supported in* the semi-spherical end of the axle housing. Plaintiff has emphasized this distinction in the two patents. However, we feel that this difference is inconsequential in the present case. The selection of either of these two alternate or reversed mountings is merely a mechanic's choice, totally lacking in invention. A mere reversal of parts or change in proportions is not usually considered sufficient to constitute achievement of invention. Ronning Machinery Co. v. Caterpillar Tractor Co., 7 C., 129 F.2d 70, 72; certiorari denied, 317 U.S. 670, 63 S.Ct. 75, 87 L.Ed. 538. Thus elements 1 through 8 of claim 10 are anticipated by the Keese patent.

In element 9 of claim 10 of the patent in suit the means preventing relative longitudinal movement of the axle shaft and the stub shaft are described as being adjustable while the means employed for this purpose in the Keese patent are not so described. However, adjustable means for the same purpose were known prior to the effective date of the patent in suit. The United States patent to H. M. Boyd, No. 1,268,208, issued June 4, 1918, discloses that a bolt is *adjusted* in the stub shaft so that the collar on the bolt abutting against a flange will hold the universal joint with its center in line with the axes of the pivot pins. Furthermore, in the United States patent to C. T. Bangs, No. 1,274,840, issued August 6, 1918, an abutment screw is described as adapted to effect a longitudinal *adjustment* of the driven shaft and the associated universal coupling so that the axes of the pivot pins are in a plane common to the upper and lower trunnions. It is ordinary mechanical skill to substitute the adjustable means taught by Boyd or Bangs for the non-adjustable means taught by Keese. The need for adjustability depends upon the particular type of universal joint construction utilized. Thus since none of the elements enumerated in claim 10 define invention over the prior art claim 10 is invalid.

Claim 4 of the patent in suit is very similar to claim 10. Elements

1 through 9 of claim 4 fail to define invention over the prior art since they have been anticipated by the Keese patent and others. Element 10 recites means for adjusting the stub shaft toward the axle shaft to *firmly engage the ball* between the ends of the axle shaft and stub shaft. If any part of claim 4 may be said to define invention over the prior art we feel that it is the feature of firm engagement set forth in element 10. Plaintiff contends that it is incorrect to restrict the scope of claim 4 to the single feature of firm engagement. However, we agree with the commissioner's finding 7 that the firm engagement is to be considered the distinguishing characteristic emphasized in the file wrapper and that the scope of claim 4 is limited thereto. In a crowded art where the accused device is almost like the old device, claims in suit cannot be stretched. Kool Kooshion Mfg. Co. v. Mitchell Mfg. Co., 8 Cir., 102 F.2d 37, 40. Thus in order for plaintiff to prevail it must appear that defendant's constructions include the feature of firm engagement.

However, an examination of the alleged infringing constructions reveals that they do not include the feature of firm engagement between a center ball and the ends of the axle and stub shafts. The plaintiff's charge of infringement is limited to the front axle construction shown in plaintiff's exhibit 4, Maintenance Manual for Willys Truck Model MB, Contract Number W–398–qm–11423, pages 1000–86 to 1000–91. The front wheel assembly illustrated on page 1000–86 of the Manual is reproduced in finding 8. Although the alleged infringing structures are similar to the patent in suit in many respects, they do not include the feature of firm engagement between a center ball and the ends of the axle and stub shafts.

The universal joint utilized in the alleged infringing constructions is described in the Manual as a Bendix joint and includes a center ball mounted on a pin in the end of the stub shaft and engaging a socket in the end of the axle shaft. When this joint is used the alleged infringing structure does not require firm engagement. The language of the Manual is clear and unequivocal in stating that it is necessary to add a shim when reassembling the shafts and the Bendix universal joint in the housing in order to have *proper clearance* in the universal joint. While the distance necessary for proper clearance is only a fraction of an inch there is clearly no firm engagement when the Bendix joint is used and thus no infringement of the patent in suit.

The Manual also refers to an alternate form of universal joint known as the Rzeppa joint. However, as in the case of the Bendix joint, the Manual does not call for firm engagement of the ball between the ends of the axle shaft and the stub shaft when this alternate joint is used. Thus claim 4 is not infringed when the Rzeppa joint is used in place of the Bendix joint.

For the reasons stated we conclude that claim 10 is invalid and claim 4 is not infringed.

Plaintiff is not entitled to recover and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.

### Findings of Fact

The court, having considered the evidence, the briefs and arguments of counsel, and the report of Commissioner Hayner H. Gordon, makes the following findings of fact:

1. This is a suit alleging patent infringement under the Act of 1910 as amended by the Act of July 1, 1918, 40 Stat. 705,* and under the provisions of § 94, Title 35 U.S.C., 35 U.S.CA.Appendix II, § 94 (then in effect). As originally filed on June 21, 1948, the petition alleged infringement of six United States

---

* Now 28 U.S.C.A. § 1498.

Letters Patent. Before the trial of this case plaintiff withdrew five of these six patents. The patent upon which plaintiff has relied in the trial of this case, in its charge of patent infringement, is the one to Karl D. Kysor, No. 2,145,089, which issued January 24, 1939, on an application filed in the United States Patent Office on April 20, 1936. The Kysor patent relates to a "Front Wheel Drive For Automotive Vehicles." A copy of the patent in suit (plaintiff's exhibit 2) and a copy of the United States Patent Office file wrapper and contents thereof (defendant's exhibit 1), which materialized into the Kysor patent in suit, are made a part of this finding by reference.

2. At the pre-trial conference held November 22, 1949, the parties agreed, subject to correction if error appears, that the plaintiff is the owner of the entire right, title, and interest to the Kysor patent in suit. No proof has been presented by the defendant to show that title to the patent in suit is not in the plaintiff.

## Front-Wheel Drives

3. In a conventional front-wheel drive in an automotive vehicle, the power of the engine is transmitted to a differential, which divides the power and transmits it through two axially aligned driving shafts located within the front axle housing and extending outwardly toward each of the two driven and steerable front wheels. The driving shafts are connected through universal joint assemblies to the front wheels. Each drive assembly usually consists of a driving shaft, previously mentioned, and a driven or stub shaft with a single universal joint connecting the drive shaft to the stub shaft. The wheels are connected to the stub shafts. Each of these assemblies is located so that the steering axis of the front wheel driven thereby passes through the center of the universal joint. Thus, each front wheel may be simultaneously driven and turned about the steering axis for the steering operation. The universal joint assemblies are usually mounted in a hollow housing which is sealed to retain lubricant for the various parts of the universal joint assembly. In those constructions where the weight of the vehicle is not carried by the axle shaft, the front-wheel drive is called "a full floating axle drive."

## The Patent in Suit

4. The patent in suit is entitled "Front Wheel Drive For Automotive Vehicles." The construction disclosed in the patent comprises a front axle assembly employing a constant velocity universal joint between an axle shaft and a stub shaft. A housing for the stub shaft is pivotally supported by a housing for the axle shaft, and a front wheel is rotatably secured on the stub shaft housing. The axis of the pivotal connection between the housing for the stub shaft and the housing for the axle shaft extends through the center of the universal joint and at an angle toward the wheel tread. The wheel is driven by said stub shaft. The construction provides a full-floating axle front wheel drive wherein none of the vehicle weight is carried by the axle shaft or the stub shaft.

As illustrated in the drawings of the patent, of which Figure 1 is reproduced herein, the front wheel drive includes an axle shaft 3 rotatable in the axle housing 1. A stub shaft 22 is within a stub shaft housing or wheel spindle 9, and is connected to the axle shaft 3 by a universal joint. The wheel spindle 9 is provided with a semi-spherical shaped end 10 which overlaps the semi-spherical shaped end 2 of the axle housing 1. The ends 2 and 10 are pivotally connected by pivot pins 11 and 19. The wheel hub 27 is rotatable on the spindle 9 and is connected to the stub shaft 22 by the driving dog 24. The dog 24 is splined to engage splines on the stub shaft 22. A positioning member 25 is adjustable within the end of driving dog 24 to engage the outer end of the stub shaft 22 for limiting relative longitudinal movement of the stub shaft 22 with respect to the spindle 9. A conventional vehicle wheel 32 is secured on the hub 27.

THE PATENT

IN SUIT

FIG. 1.

During the trial of the case, evidence was presented with respect to claims 1, 2, 3, 4, 6, 7, 8, and 10 of the patent in suit. Plaintiff in its objections to defendant's proposed findings of fact has agreed to have the charge of infringement limited to claims 4 and 10 of the patent in suit. Therefore, the foregoing description of the disclosure of said patent is limited to the structure forming the subject matter of claims 4 and 10.

The patent in suit states that the universal joint connecting the axle shaft 3 and the stub shaft 22 may be of any approved type, but that it is preferably a constant velocity joint in order that the stub shaft 22 may be driven at the same speed as the axle shaft 3 in its different positions. The use of a constant velocity type of universal joint provides that stub shaft 22 will rotate at the same angular velocity as axle shaft 3 when the shafts are aligned and when they are not in axial alignment.

The constant velocity universal joint disclosed in the patent in suit is conventional in the prior art and includes a ball 8 between a spherical seat on the end of portion 7 of the axle shaft 3, and a spherical seat on the end of portion 23 of the stub shaft 22. The patent specification states that the positioning member or nut 25 allows the stub shaft and the axle shaft ends to be maintained

in firm engagement against the ball 8 by the setting of the position nut 25. The specification places emphasis on the fact that the construction disclosed is arranged so that the stub shaft 22 may be adjusted to maintain a desired pressure on the ball 8 between the end 23 of the stub shaft and the end 7 of the axle shaft. No particular type of universal joint is specified in the claims in suit. In this connection, the specification states as follows:

The universal joint connecting the axle shaft 3 and stub shaft 22 may be of any approved type but is preferably a constant velocity joint in order that the stub shaft 22 may be driven at the same speed as the axle shaft 3 in its different positions. There are several well known types of joints which may be used in this front wheel drive though some are more effective than others.

5. For convenience in considering the phraseology of the two claims remaining in suit, they are set out as follows:

Claim 4—

1. A front wheel drive for automotive vehicles comprising

2. an axle housing having a semi-spherical end,

3. a wheel spindle having a semi-spherical end,

4. a wheel mounted on the spindle,

5. pivot pins connecting the semi-spherical ends of the axle housing and wheel spindle,

6. a shaft rotatably mounted in the axle housing,

7. a stub shaft rotatably mounted in the wheel spindle,

8. a universal joint connecting the axle shaft and stub shaft,

9. a ball socketed between the ends of the axle shaft and stub shaft and within the semi-spherical ends of the axle housing and wheel spindle, the pivot pins between the semi-spherical ends of the axle housing and wheel spindle preventing separation of the parts

10. and means for adjusting the stub shaft toward the axle shaft to *firmly en-gage the ball* between the ends of the axle shaft and the stub shaft and the axis of the pivot pins extending through the center of the ball and at an angle toward the wheel tread. [Italics supplied.]

Claim 10—

1. A front wheel drive for automotive vehicles comprising

2. an axle housing having a semi-spherical end,

3. an axle shaft therein,

4. a wheel spindle having a semi-spherical end engaging over the semi-spherical end of the axle housing,

5. a stub shaft housed by the wheel spindle,

6. a wheel and a tire supported by the spindle,

7. pivot pins supported in the semi-spherical end of the wheel spindle and pivotally engaging the semi-spherical end of the axle housing,

8. a universal joint connecting the axle shaft and stub shaft positioned within the semi-spherical end of the axle housing, the center point of the universal joint being at one side of the plane occupied by the inner side of the wheel and the axial line extending between the pivot pins passing through the center of the universal joint and intersecting the tire adjacent the road surface,

9. and *adjustable* means preventing relative longitudinal movement of the axle shaft and the stub shaft to constantly maintain the turning center of the universal joint on the axial line extending between the pivot pins. [Italics supplied.]

6. As to claim 10 of the patent in suit, elements 1 through 8 of claim 10, as it is set forth above, are all found to be clearly disclosed in prior patents. The United States patent to B. W. Keese, No. 1,995,-987, issued March 26, 1935 (defendant's exhibit 8), is prior art with respect to the patent in suit. This Keese patent discloses in Figure 1, which is reproduced herein, a front-wheel drive comprising an axle housing 35 having a semi-spherical end, an axle shaft 12 therein, a wheel

spindle 54 having a semi-spherical end 37 engaging over the semi-spherical end of the axle housing 35, a stub shaft 25 housed by the wheel spindle 54, a wheel 58 and tire supported by the spindle 54, pivot pins 47 pivotally engaging the semi-spherical end of the wheel spindle 54 and supported in the semi-spherical end of the axle housing 35, a universal joint 17, 18, and 23, connecting the axle shaft 12 and the stub shaft 25 and positioned within the semi-spherical end of the axle housing 35, the center point 17 of the universal joint being at one side of the plane occupied by the inner side of the wheel 58, and the axial line extending between the pivot pins 47 passing through the center 17 of the universal joint and intersecting the tire adjacent the road surface, and (adjustable) means, cap 73, bolt 74, sleeve 19, and flange 16, preventing relative longitudinal movement of the axle shaft 12 and the stub shaft 25 to constantly maintain the turning center 17 of the universal joint on the axial line extending between the pivot pins 47. The means preventing relative longitudinal movement of the Keese axle shaft 12 and the stub shaft 25 are not described in the Keese patent specification as being adjustable.

However, adjustable means for the same purpose were well known prior to the effective date of the patent in suit, and such adjustable means are disclosed in the United States patent to H. M. Boyd, No. 1,268,208, issued June 4, 1918 (defendant's exhibit 20), and in the United States patent to C. T. Bangs, No. 1,274,840, issued August 6, 1918 (defendant's exhibit 19). In the Boyd patent disclosure, the bolt 10 is adjusted in the stub shaft so that the collar on the bolt abutting against the flange 8 will hold the universal joint with its center in line with the axes of the pivot pins 18. In the Bangs patent disclosure, the abutment screw 29 is described as adapted to effect a longitudinal adjustment of the driven shaft 23 and the associated universal coupling 24 so that the axes of its pivot pins are in a plane common to the axes of the upper and lower trunnions

10 and 11. It is ordinary mechanical skill to substitute the adjustable means taught by Boyd or by Bangs for the non-adjustable means taught by Keese. The need for adjustability depends upon the particular type of universal joint construction utilized. The patent in suit states that the universal joint may be of any approved type, and preferably a constant velocity joint. With the ball type constant velocity joint illustrated in the patent in suit, adjustability is needed to maintain the center ball in proper position. With the double universal constant velocity joint shown in the Keese patent construction, the means preventing relative longitudinal movement of the shafts and joint need not be adjustable. Claim 10 does not define invention over the prior art.

7. Claim 4 in suit is generally similar to claim 10. Elements 1 through 9 fail to define invention over the prior art. Element 10 recites means for adjusting the stub shaft 22 toward the axle shaft 3 to "firmly engage" the ball 8 between the ends of the axle shaft 3 and the stub shaft 22. In response to a Patent Office rejection of claim 4 as being substantially met by the above-mentioned Keese patent disclosure, it was argued that:

The adjustment in applicant's case may move the stub shaft toward the ball to provide for working engagement therewith and preventing any lost motion between the ends of the axle shaft and stub shaft, the axle shaft being sustained against movement through adjustment of the stub shaft. The claims as amended are believed to involve this distinguishing characteristic of applicant's structure, claim 1 having been amended to involve a stub shaft longitudinally adjustable to maintain a *firm bearing* on the ball and prevent relative longitudinal displacement of the stub shaft and axle shaft. [Italics supplied.]

The language of claim 4 of the patent in suit and the remarks leading to its allowance by the Patent Office indicate that the *firm engagement* of the joint ball by the ends of the axle and stub shafts is to be considered the distinguish-

Keese patent No. 1,995,987

ing characteristic emphasized in the file wrapper and thus limiting the scope of the claim.

### The Alleged Infringing Structure

8. The alleged infringing constructions do not include the feature of firm engagement between a center ball and the ends of the axle and stub shafts. The plaintiff during the course of the trial limited its charge of infringement to the front axle constructions shown in plaintiff's exhibit 4, Maintenance Manual for Willys Truck Model MB, Contract Number W–398–qm–11423, pages 1000–86 to 1000–91. The front wheel assembly illustrated on page 1000–86 of said Manual is reproduced herein. The front-wheel drive assembly illustrated includes an axle shaft 3 rotatable in the axle shaft housing 1. A stub shaft 22 is within a stub shaft housing or wheel spindle 9, and is connected to the axle shaft 3 by a universal joint J. The wheel spindle 9 is provided with a semi-spherical shaped end 10 which overlaps the semi-spher-ical shaped end 2 of the axle housing 1. The ends 2 and 10 are pivotally connected by pivot pins 11 and 19. The wheel hub 27 is rotatable on the spindle 9 and is connected to the stub shaft 22 by the driving dog 24 bolted to the hub 27. The dog 24 is splined to engage splines on the stub shaft 22 and is rigidly secured to the stub shaft by nut N. Shims S are provided between the peripheral flange of the dog 24 and the end of the hub 27. The thickness of the shims S determines the longitudinal position of the stub shaft 22 with respect to the stub shaft housing or spindle 9, and hence with respect to the universal joint J. The universal joint J illustrated is described in the Manual as a Bendix joint and includes a center ball 8 mounted on a pin in the end of stub shaft 22 and engaging a socket in the end of the axle shaft. Pages 1000–89 and 1000–90 of the Manual describe how to reassemble the shafts and the Bendix universal joint in the housings. The parts are placed together as shown in

Figure 1 but without shims S. The space between the end of the hub 27 and the peripheral flange of dog 24 is then measured with a feeler gauge. The Manual states:

In order to have proper clearance in the universal joint, it is necessary to add a .040″ shim to those required as measured by the Feeler Gauge.

9. The alleged Bendix joint infringing structure does not provide for firm engagement of the ball 8 between the ends of the axle shaft and the stub shaft. The language of the Willys Manual is plain and unequivocal in stating that it is necessary to add a shim to those required as measured by the feeler gauge in order to have proper *clearance* in the universal joint. While the difference between clearance and a firm engagement may be only a matter of relatively small fraction of an inch, claim 4 is specific in reciting firm engagement, and is not infringed by the accused construction.

10. The Willys Manual also refers to a second or alternate form of universal joint known as the Rzeppa joint. A form of Rzeppa universal joint is illustrated in the Keese patent also mentioned above. The parties agreed during the course of the trial that actual use of the Rzeppa universal joint in a front-wheel drive does not produce forces tending to separate or force apart the stub shaft from the axle shaft. The Rzeppa joint does not require axial adjustment of the stub shaft, and does not include "means for adjusting the stub shaft toward the axle shaft to firmly engage a ball between the ends of the axle shaft and the stub shaft." The Willys Manual states that:

With Rzeppa joint be sure to install all the shims as removed when dismantling the axle drive flange. (.060″ shims in each side).

The Rzeppa joint structure does not infringe claim 4 of the patent in suit.

11. Claim 10 is invalid, and claim 4 is not infringed.

THE ALLEGED INFRINGING STRUCTURE

FIG. 1—FRONT WHEEL

### Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover and the petition is therefore dismissed.