**MAYER BOAT WORKS, INC., etc., Libellant,**

v.

**BRIGHT MARINE BASIN, INC., Respondent.**

No. 62–A–1323.

United States District Court
E. D. New York.
March 14, 1966.

Bigham, Englar, Jones & Houston, New York City, for libellant, by Louis P. Sheinbaum, New York City.

Marshall G. Kaplan, Brooklyn, N. Y., for respondent.

MISHLER, District Judge.

The libel states a claim for damages to libellant's yacht "Gray Goose" in lifting and hauling the yacht out of the water at respondent's boat yard at College Point, Long Island, on August 17, 1962. Respondent's answer generally denies the claim and alleges that libellant supervised and directed the lifting operation; that the damage to the boat was due to the negligence of libellant; and that libellant assumed the risk of using defective equipment.

Libellant and respondent are both in the business of storing and repairing boats. Libellant operates a boat yard in College Point, L. I., N. Y., and respondent operates a boat yard in Flushing, L. I., N. Y. The yards are about 1½ miles apart on Flushing Bay. Libellant, since 1959, owned a 43′ cruiser built by Wheeler Yacht Co. in 1957 called the "Gray Goose". It weighed about 15 to 17 tons. Prior to August 14, 1962, the propellers of the "Gray Goose" were in disrepair. It was necessary to lift the boat out of the water to install new propellers. Libellant had a lift in his yard with a capacity of six tons. Emil Mayer, Jr., libellant's principal officer, called James E. Snyder, an officer of respondent, to ascertain the capacity of the lift at respondent's yard. Mr. Snyder told Mr. Mayer that it had a capacity of 25 tons. Mr. Mayer had previously used a similar lift in Florida in the yards of a "Bright" boat yard which is operated by a relative of Mr. Snyder. Mr. Snyder assured Mr. Mayer that it was the same lift.

The lift is known as an Algonac Electric Boat Hoist consisting of two twin-steel A frames with a steel cable hung from the apex of each A in the frame. The twin A's were joined by a steel girder which spanned the wet basin or slip in which the boat to be lifted is positioned. Two lifting straps (belly-band straps) attached to hooks suspended from the frames are placed under the boat—one fore, one aft—and raised by an electric hoist drum.

At the time Mr. Mayer inquired as to the capacity of the lift he also asked Mr. Snyder the charge for the same. Mr. Snyder told him the price would be 75¢ per foot and to "pay it to the boys," referring to respondent's employees engaged in the task.

On August 17, 1962 at about 12:30 P.M., Mr. Mayer brought the "Gray Goose" to respondent's yard and positioned the boat in the slip for the lifting operation. John O'Rourke, respondent's foreman, and another employee of respondent placed the lifting straps under the boat. Respondent's employees operated the hoist and lifted the boat out of the water vertically. Mr. O'Rourke operated the horizontal movement of the hoist to bring the boat over land. While moving horizontally, the forward lifting strap pulled out of the steel sockets (to which the cable hooks were attached), and the boat fell against the dock. The after lifting band was then wrenched from the sockets and the boat fell back into the slip, causing extensive damage.

The straps upon which this boat depended for safe and proper lifting came with the original equipment; respondent purchased the equipment approximately in 1954 or 1955, but certainly no later than 1957. This hoist lifts between 500 to 600 boats per year. The frequency of the use of these straps as distinguished from lighter-weight straps is uncertain. These straps were used five or six weeks prior to August 17, 1962. These bands were used approximately 300–400 times since 1960. There is testimony that new cable was installed in the straps by Mr. O'Rourke in 1960. Mr. O'Rourke made only a casual examination of the straps prior to use; they were not disassembled for inspection or repairs since 1960.

The cable extending into the socket of the forward lifting pad was rusted, worn, and not fit for the purpose of lifting the "Gray Goose" out of the slip on to land.

### Jurisdiction

Respondent argues that this Court is without jurisdiction. It is urged that the oral agreement for lifting the vessel out of the water is not a maritime contract and, further, that the agreement was nothing more than a gratuitous offer of the use of respondent's equipment.

■ Oral contracts are valid and enforceable in maritime law and, in seeking uniformity, are enforceable where local law is to the contrary. Kossick v. United Fruit Co., 1961, 365 U.S. 731, 734, 741, 81 S.Ct. 886, 889, 893, 6 L.Ed.2d 56. The contract made to lift this vessel out of the water was clearly a maritime contract. North Pac. S. S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 1919, 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510. The consideration for the services to be rendered was $32.25. That this was less than the customary price is unimportant; nor is it of any significance that libellant was to pay the sum to respondent's employees. 1 Williston, Contracts § 113 (3d ed. 1957). The fact is that libellant was obligated to pay for the services.

■■ The claim also sounds in tort. Since the tort was committed in navigable waters, it is a maritime tort. Admiralty jurisdiction depends on the place of the tort. Middleton v. United Aircraft Corp., 1960, S.D.N.Y., 204 F. Supp. 856. The fact that the instrumentality causing the damage is land based is unimportant. Todd Shipyards Corp. v. Harbor Side Trading & Supply Co., 1950, E.D.N.Y., 93 F.Supp. 601; Horan Transp. Corp. v. Albany Asphalt & Aggregates Corp., 1949, N.D.N.Y., 88 F. Supp. 494.

### Burden of Proof

■ The hoist was solely in the possession and control of respondent; it had exclusive knowledge of the care exercised in the maintenance of the hoist; the hoist had the capacity to lift boats of the weight of the "Gray Goose" and had done so. This accident would not ordinarily have occurred except for the negligence of respondent in the care and maintenance of this equipment. Under such circumstances, libellant, favored with the inference of negligence of respondent, was not obliged to prove negligence; rather, the burden shifts to respondent. Horan Transp. Corp. v. Albany Asphalt & Aggregates Corp., supra. Libellant, nevertheless, established the negligence of respondent in the care and maintenance of the hoist and particularly of the lifting bands. Such procedure did not effect a waiver of any inference of negligence, Schneider v. United States, 1960, E.D.N.Y., 188 F. Supp. 911, 914; and the proof offered by respondent did not meet libellant's proof or overcome the inference of negligence.

■ Libellant has also established its claim on a theory of breach of maritime contract. It was clearly shown that respondent failed to perform the services in a good and workmanlike manner.

An interlocutory decree may be entered in favor of libellant and against respondent. Settle decree on two (2) days notice providing for a hearing before the Court on the issue of damages.

### FINDINGS OF FACT

1. Libellant is, and was on August 17, 1962, a corporation duly organized and existing under the laws of the State of New York, engaged in the business of storing and repairing boats at a yard fronting on Flushing Bay at College Point, L. I., N. Y.

2. Libellant is, and was on August 17, 1962, the owner of a 43′ Wheeler Cruiser built in 1957, and known as the "Gray Goose".

3. Respondent is, and was on August 17, 1962, a corporation duly organized and existing under the laws of the State of New York, engaged in the business of storing and repairing boats at a yard fronting on Flushing Bay at Flushing, L. I., N. Y.

4(a). On August 14, 1962, libellant, by Eric Mayer, Jr., a duly authorized officer, and respondent by James E.

Snyder, a duly authorized officer, entered into a contract wherein and whereby respondent agreed to lift libellant's cruiser "Gray Goose" out of the navigable waters of Flushing Bay, and return the said vessel to the Bay after the propellers had been replaced at an agreed price of 75¢ per foot—a total price of $32.25.

(b). Respondent represented that its Algonac Electric Boat Hoist had the capacity to lift the "Gray Goose" out of the water, place it on dry dock for repairs and return it to the water.

(c). Respondent directed that the consideration for the services to be rendered be paid to its employees engaged in the task.

5(a). The Algonac hoist installed at respondent's yard consists of two twin A frames on either side of a wet slip. Each frame is joined overhead by a steel beam or girder that spans the slip. A steel cable is affixed to the apex of each A frame and a hook is attached to the free end of the cable. This hook accommodates a lifting strap, so that when attached, the lifting strap spans the slip. Two lifting straps—one for each frame—holds and cradles the boat in the lifting operation.

(b). The lifting operation is performed when the steel cables are pulled up by the electric hoist drum. After the boat is raised, it is brought over land by a horizontal movement of the hoist on rails.

(c). The lifting pads are supported by steel cables that enter a socket which engages the cable hook.

6. John J. O'Rourke was, on August 17, 1962, employed by respondent as a foreman.

7(a). On August 17, 1962, Mr. O'Rourke selected the lifting bands to be affixed to the cable hooks preparatory to lifting the "Gray Goose".

(b). Eric Mayer, Jr. brought the boat into the slip and positioned the lifting bands fore and aft.

(c). The vertical movement of the lift was performed by Mr. O'Rourke and another employee of respondent.

(d). After the boat was lifted out of the water, Mr. O'Rourke performed the operation to move the frames horizontally toward land.

(e). The cables of the forward lifting strap pulled out of the sockets and parted. The hull fell against the dock.

(f). The cables of the other lifting strap pulled out of the sockets and parted. The boat fell back into the slip.

8. The lifting straps were part of the original equipment purchased by respondent in 1957 or prior thereto. Testimony by Mr. O'Rourke that new cables were installed by him in 1960 is rejected and the Court finds that no repair was made to the straps.

9(a). Prior to use of the straps on August 17, 1962, Mr. O'Rourke made a casual visual examination of the lifting pads.

(b). The examination was inadequate and was not prudently made.

10. The sockets were not disassembled, repaired or examined since the lifting pads came into respondent's possession.

11. The usefulness of a lifting pad under normal use and wear and tear does not exceed five years.

12. The cables at the point where they are held in the socket were rusted, weak and worn.

13. The lifting pads were not fit for lifting a boat of the size and weight of the "Gray Goose" on August 17, 1962.

14. The services rendered in lifting the boat out of the slip were under the exclusive supervision and control of respondent.

15. The condition of the lifting pads on August 17, 1962 was within the exclusive knowledge of respondent.

16(a). Respondent breached its contract for services in failing to perform said services in a workmanlike manner.

(b). Respondent was negligent in failing to keep the lifting pads in good condition and in proper repair.

17. The extensive damage to the hull was proximately caused by the negli-

gence of respondent as aforesaid and said damages were within the reasonable contemplation of the parties to the contract.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of the libel [28 U.S.C. § 1333, 46 U.S.C. § 740].

2. Libellant is entitled to an interlocutory decree against respondent.